UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ANTONIO ZAMORA,

    Plaintiff,

v.                                                           Case No.:  2:21-cv-102-JES-MRM

SENIOR CARE RESIDENCES
SAPPHIRE LAKES AT NAPLES,
LLC.,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Pending before the Court is the parties' Joint Motion to Approve Settlement and Joint Stipulation of Dismissal with Prejudice, filed on June 22, 2021.  (Doc. 11). Plaintiff Antonio Zamora and Defendant Senior Care Residences Sapphire Lakes at Naples, LLC request that the Court approve the parties' settlement and dismiss the case with prejudice.  (*Id*. at 1, 7).  After careful review of the parties' submission and the record, the Undersigned respectfully recommends that the joint motion (Doc. 11) be **DENIED without prejudice**.

### BACKGROUND

Plaintiff filed a one-count Complaint in this matter on February 8, 2021. (Doc. 1).  Specifically, Plaintiff asserts a claim for violation of the Fair Labor Standards Act ("FLSA"), alleging that Defendant failed to pay him one and one-half times his regular rate for hours worked in excess of forty hours per week.  (*Id.* at 8).

Plaintiff alleges a total of $1,872.00 in unpaid overtime wages. (*Id.* at 9). Defendant has yet to file an Answer.

The parties filed their joint motion on June 22, 2021, (Doc. 11), and the proposed settlement agreement the next day, (Doc. 12-1).

## LEGAL STANDARD

To approve the settlement of FLSA claims, the Court must determine whether the settlement is a "fair and reasonable [resolution] of a bona fide dispute" of the claims raised. *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982); 29 U.S.C. § 216. There are two ways for a claim under the FLSA to be settled or compromised. *Lynn's Food Stores*, 679 F.2d at 1352-53. The first is under 29 U.S.C. § 216(c), providing for the Secretary of Labor to supervise the payments of unpaid wages owed to employees. *Lynn's Food Stores*, 679 F.2d at 1353. The second is under 29 U.S.C. § 216(b) when an action is brought by employees against their employer to recover back wages. *Lynn's Food Stores*, 679 F.2d at 1353. When the employees file suit, the proposed settlement must be presented to the district court for the district court's review and determination that the settlement is fair and reasonable. *Id.* at 1353-54. The Eleventh Circuit has found settlements to be permissible when employees bring a lawsuit under the FLSA for back wages. *Id.* at 1354. Specifically, the Eleventh Circuit held:

> [A lawsuit] provides some assurance of an adversarial context. The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a

> reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute; we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.

*Id.*

Applying these standards, the Undersigned analyzes the proposed terms of the settlement agreement below.

## ANALYSIS

### I. Bona Fide Dispute

As a threshold matter, the Undersigned finds that a bona fide dispute exists between the parties. As noted in the joint motion, Plaintiff claims entitlement to unpaid compensation under the FLSA. (Doc. 11 at 1). Although Defendant has yet to file an Answer in this case, it "denies Plaintiff's allegations and disputes the validity of his claims." (*Id.*). Accordingly, the proper focus is whether the terms of the proposed settlement are fair and reasonable.

The Undersigned addresses the monetary terms, non-cash concessions, and attorney's fees and costs separately below. Notably, while the Undersigned finds that the joint motion is due to be denied without prejudice based upon concerns about several of the non-cash concessions, the Undersigned addresses the settlement in its entirety in the event that the presiding United States District Judge disagrees with the Undersigned's analysis of any of the problematic provisions or, in the event

3

the presiding United States District Judge adopts the Undersigned's analysis, for the benefit of the parties.

## II.   Monetary Terms

In his Complaint, Plaintiff contends that Defendant deprived him of proper overtime compensation for a 24-week period.  (Doc. 1 at 9).  Calculating four hours of "off-the-clock hours" each week at an overtime rate of $19.50 per hour, Plaintiff alleges that he is owed a sum total of $1,872.00.  (*Id.*).  Although Plaintiff concedes that he does not possess time and payment records, he asserts that he has bi-weekly checks and paystubs showing the actual number of hours he worked.  (*Id.* at 5).  As noted above, Defendant denies these allegations.  (Doc. 11 at 1-2).  Moreover, in the joint motion, the parties acknowledge that Defendant's pay records show that Plaintiff "averaged only 35.23 hours per week[,] . . . meaning even if his disputed off the clock claim were true, much of these off the clock hours would not have been overtime hours."  (*Id.* at 2).

The parties' settlement is for a total of $5,500.00, including $1,000.00 "for unpaid wages and overtime," $1,000.00 "for liquidated damages," and $3,500.00 "for attorneys' fees and costs."  (Doc. 12-1 at 1-2).  In explaining the monetary terms of the settlement, the parties assert that Plaintiff is receiving "full value for his overtime claim," which the parties agree equates to "as much overtime pay as he could recover even if he were to prevail on his claim at trial."  (Doc. 11 at 2).  Additionally, the parties represent that they engaged in "arms-length negotiations" to determine the final settlement amount and that there was "no collusion, fraud, or

any other inappropriate conduct by either Plaintiff or Defendant with respect to the settlement ultimately agreed upon." (*Id.* at 4).  Moreover, the parties note that Plaintiff and Defendant were "independently represented by counsel with experience in litigating claims under the FLSA." (*Id.*).  Finally, the parties assert that the settlement is appropriate given "the cost of protracted litigation and the risk of each side winning or losing." (*Id.*).

In light of the parties' averments as to the settlement discussions and their interest in minimizing future risks and litigation expenses and the relatively small difference between Plaintiff's alleged damages and the settlement sum, the Undersigned finds that the monetary terms of the proposed settlement agreement are fair and reasonable.  (*See id.* at 2-5).  This finding is bolstered by the parties' acknowledgment that despite Plaintiff's allegations of the number of "off-the-clock hours" he worked, many of those hours would not have been overtime hours.  (*See id.* at 2).  Accordingly, the Undersigned recommends that the presiding United States District Judge approve the monetary terms of the proposed settlement agreement.

### III. Non-Cash Concessions

The proposed settlement agreement also contains several non-cash concessions.  A number of jurists in this District have expressed the view that non-cash concessions by an employee affect both the "fairness" and "full compensation" components of a settlement and require their own fairness finding.  *See Jarvis v. City Elec. Supply Co.*, No. 6:11-cv-1590-Orl-22DAB, 2012 WL 933057, at *5 (M.D. Fla.

Mar. 5, 2012), *report and recommendation adopted*, No. 6:11-cv-1590-Orl-22DAB, 2012 WL 933203 (M.D. Fla. Mar. 20, 2012) (citing *Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1348 (M.D. Fla. 2010)).

However, other jurists in this District have approved non-cash concessions in FLSA settlement agreements where the concessions were negotiated for separate consideration or where there is a reciprocal agreement that benefits all parties. *Bell v. James C. Hall, Inc.*, No. 6:16-cv-218-Orl-41TBS, 2016 WL 5339706, at *3 (M.D. Fla. Aug. 16, 2016), *report and recommendation adopted*, No. 6:16-cv-218-Orl-41TBS, 2016 WL 5146318, at *1 (M.D. Fla. Sept. 21, 2016); *Smith v. Aramark Corp.*, No. 6:14-cv-409-Orl-22KRS, 2014 WL 5690488, at *4 (M.D. Fla. Nov. 4, 2014). The Undersigned addresses each of the non-cash concessions made by the parties under the proposed settlement below.

### A. Release of Senior Care and Engage

First, the proposed settlement agreement contains a "Release of Senior Care and Engage" stating, in relevant part, that Defendant and Engage PEO, LLC are "release[d] and discharge[d]" from:

> [A]ny and all claims, demands, causes of action, complaints or charges, known or unknown, of any kind or character, in tort, in contract, or under any other law or statute whatsoever, which Zamora has or might have as a result of, or in any way connected with his employment or separation of employment with Senior Care.

(Doc. 12-1 at 2). The clause explicitly releases:

> [C]laims under the Fair Labor Standards Act, Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights

6

>Act of 1866 and 1871, the Americans With Disabilities Act, the Employee Retirement Income Security Act, as amended, [t]he Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, the Family and Medical Leave Act, the Pregnancy Discrimination Act, the Equal Pay Act of 1973, the Rehabilitation Act of 1973, the Occupational Safety and Health Act, the Immigration Reform and Control Act, the Age Discrimination in Employment Act, the Older Workers Benefit Protection Act, the Civil Rights Act of 1991, 42 U.S. C. § 1981, the Genetic Information Nondiscrimination Act, the Labor Management Relations Act, 29 U.S.C. § 141, *et seq.,* the False Claims Act, 31 U.S.C. §§ 3729-3733 (including the *qui tam* provisions), the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.,* the Consumer Credit Protection Act, 15 U.S.C. § 1674, *et seq.,* the Sarbanes-Oxley Act, 15 U.S.C. § 7201, *et seq.,* the Dodd-Frank Act, the Employee Polygraph Protection Act, 29 U.S.C. § 2001, *et seq.,* the Families First Coronavirus Response Act, American Rescue Plan Act, the Florida Civil Rights Act of 1992, as amended, the Florida Whistleblower Act, Florida Statutes Section 440.205, the Florida Minimum Wage Act and all other local, state or federal laws.

(*Id.*).

Notably, this release is not limited solely to the FLSA claim at issue, but broadly written to include almost any legal claim Plaintiff "has or might have by virtue of any fact(s), act(s) or event(s) occurring prior to the effective date of this Agreement." (*Id.* at 2-3).

General releases in FLSA settlement agreements are generally problematic. *See Serbonich v. Pacifica Fort Myers, LLC*, No. 2:17-cv-528-FtM-29MRM, 2018 WL 2440542, at *2 (M.D. Fla. May 29, 2018), *report and recommendation adopted*, No. 2:17-cv-528-FtM-29MRM, 2018 WL 2451845 (M.D. Fla. May 31, 2018).

7

Accordingly, the *Lynn's Food Stores* analysis necessitates a review of the proposed consideration as to each term and condition of the settlement, including forgone or released claims. *Shearer v. Estep Const., Inc.*, No. 6:14-cv-1658-Orl-41, 2015 WL 2402450, at *3 (M.D. Fla. May 20, 2015). As the Court has noted, however, evaluating unknown claims is a "fundamental impediment" to a fairness determination. *Id.*; *see also Moreno*, 729 F. Supp. 2d at 1350-52. Indeed, the Court typically "cannot determine, within any reasonable degree of certainty, the expected value of such claims." *Shearer*, 2015 WL 2402450, at *3. Thus, the task of determining adequate consideration for forgone claims is "difficult if not impossible." *Id.* (quoting *Bright v. Mental Health Res. Ctr., Inc.*, No. 3:10-cv-427-J-37TEM, 2012 WL 868804, at *4 (M.D. Fla. Mar. 14, 2012)).

Notwithstanding these difficulties, such provisions may be approved when the Court can determine that such a clause is fair and reasonable under the facts of the case. *See, e.g.*, *Vela v. Sunnygrove Landscape & Irrigation Maintenance, LLC*, No. 2:18-cv-165-FtM-38MRM, 2018 WL 8576382, at *3-4 (M.D. Fla. Oct. 4, 2018), *report and recommendation adopted*, No. 2:18-cv-165-FtM-38MRM, 2018 WL 8576384, at *1 (M.D. Fla. Nov. 7, 2018) (approving a general release, emphasizing that the parties' briefing explained that "(1) the clauses were specifically bargained for between the parties and (2) the mutual general release was not a condition of their FLSA settlement"); *also Middleton v. Sonic Brands L.L.C.,* No. 6:13-cv-386-Orl-18KRS, 2013 WL 4854767, at *3 (M.D. Fla. 2013) (approving a settlement agreement that included a general release because the plaintiffs received separate consideration);

*Bacorn v. Palmer Auto Body & Glass, LLC*, No. 6:11-cv-1683-Orl-28, 2012 WL 6803586, at *2 (M.D. Fla. Dec. 19, 2012), *report and recommendation adopted*, No. 6:11-cv-1683-Orl-28, 2013 WL 85066 (M.D. Fla. Jan. 8, 2013) (approving settlement agreement that included a general release where the case also involved non-FLSA claims and the employee signed a general release in exchange for a mutual release from employer).

In the case *sub judice*, the parties give no indication of what additional consideration was exchanged for Plaintiff's concessions or why that consideration should be deemed fair and reasonable. It appears, therefore, that this provision potentially inures exclusively to Defendant's benefit. For this reason alone, the Undersigned cannot recommend that the Release be approved. *See Lavin v. Pierhouse-Ft Myers Beach LTD,* No. 2:18-cv-801-FtM-99MRM, 2019 WL 2178295, at *4 (M.D. Fla. Apr. 30, 2019), *report and recommendation adopted*, No. 2:18-cv-801-FtM-99MRM, 2019 WL 2173831 (M.D. Fla. May 20, 2019).

Moreover, to the extent the provision seeks to release non-party Engage PEO, LLC, the parties have provided no briefing as to the relationship between Defendant and non-party Engage PEO, LLC or the propriety of releasing a non-party in an FLSA context. *See Lina Arguelles v. Noor Baig, Inc.*, No. 6:16-cv-2024-37TBS, (Doc. 22) (declining to approve a general release as it applies to non-parties). Similarly, the parties provided no indication as to what, if any, consideration non-party Engage PEO, LLC is required to provide in exchange for Plaintiff's release. Without more,

9

the Undersigned cannot recommend approving the Release as it relates to Engage PEO, LLC.

### B. Withdrawal of Charge

Next, the proposed settlement agreement contains a Withdrawal of Charge provision, providing in full that:

> As a condition of making this Agreement and concurrently with the execution of this Agreement, Zamora shall withdraw any Charge of Discrimination filed by him. Zamora further agrees: (A) that any claims he has or might have pertaining to Senior Care's employment practices arising under any municipal, state, or federal law are completely settled; and (B) that he will withdraw any Charge and any pending complaints, charges, claims or causes of action that may have been filed against Senior Care and/or Engage with any municipal, state or federal government agency or court. Nothing in this Agreement is intended to, or shall, interfere with Zamora's rights under federal, state, or local civil rights or employment discrimination laws to file or otherwise institute a charge of discrimination, to participate in a proceeding with any appropriate federal, state, or local government agency enforcing discrimination laws, or to cooperate with any such agency in its investigation, none of which shall constitute a breach of this Agreement. Zamora shall not, however, be entitled to any relief, recovery, or monies in connection with any such action or investigation brought against Senior Care and/or Engage, regardless of who filed or initiated any such complaint, charge, or proceeding.

(Doc. 12-1 at 3).

As an initial matter, it is not clear whether Plaintiff has actually filed any Claims for Discrimination. If he has not, the significance of this provision is unclear. Specifically, while the provision facially requires Plaintiff to withdraw any pending claim, it appears that it does not prohibit Plaintiff from filing new claims. (*See id.*

10

("Nothing in this Agreement is intended to, or shall, interfere with Zamora's rights under federal, state, or local civil rights or employment discrimination laws to file or otherwise *institute* a charge of discrimination.") (emphasis added)).  In either case, the Undersigned finds that the briefing is insufficient to determine whether the inclusion of the provision precludes the approval of the settlement agreement.

In reaching this conclusion, the Undersigned notes that this Court has approved provisions requiring a plaintiff to withdraw charges filed before government entities against the defendant when the provision was agreed to for separate consideration.  *See, e.g.*, *Caseres v. Texas de Brazil (Orlando) Corp.*, No. 6:13-cv-1001-Orl-37KRS, 2014 WL 12617465, at *2 (M.D. Fla. Apr. 2, 2014), *report and recommendation adopted*, No. 6:13-cv-1001-Orl-37KRS, 2014 WL 12623797 (M.D. Fla. Apr. 10, 2014) (comparing a provision requiring a plaintiff to withdraw charges pending before the EEOC and the Florida Commission on Human Relations to general releases and approving the provision because the plaintiff received separate monetary consideration).

Here, however, the parties' briefing does not address whether Plaintiff received any additional consideration in exchange for the provision.  Thus, the Court is unable to determine whether including such a provision would be a fair and reasonable resolution of the FLSA claim.  *See Southwick v. Pystmo, LLC*, No. 2:16-cv-625-FtM-99CM, 2018 WL 1866093, at *2 (M.D. Fla. Feb. 15, 2018) (finding that it cannot approve a settlement agreement with a general release containing withdrawal of claims because the parties' briefing does not indicate the provision was supported

11

by independent consideration). Based on the deficiencies in the briefing regarding whether Plaintiff has filed a Claim for Discrimination and what consideration, if any, was exchanged, the Undersigned cannot recommend the approval of this provision at this time.

### C.    No Re-Employment

The proposed settlement agreement also contains a No Re-Employment provision whereby "Zamora expressly waives and disclaims any right to be re-hired by, reinstated or re-employed with Senior Care, and agrees never to seek employment with Senior Care at any time in the future." (Doc. 12-1 at 3).

A no re-employment agreement plainly injures the plaintiff, and where the parties' briefing does not address the issue of additional consideration, courts cannot determine whether their inclusion in a settlement agreement represents "a fair and reasonable resolution of the parties' FLSA dispute." *See Diviney v. Inisron Cafe Inc.*, No. 2:18-cv-236-FtM-38MRM, 2019 WL 5110620, at *2-3 (M.D. Fla. July 2, 2019), *report and recommendation adopted*, No. 2:18-cv-236-FtM-38MRM, 2019 WL 5140307 (M.D. Fla. July 18, 2019). Nevertheless, the Undersigned has recommended approving such clauses where the facts of the case permit a finding that the provision was exchanged for sufficient consideration. *See, e.g.*, *Siebert v. Novak Envtl. Servs., LLC.*, No. 2:18-cv-796-FtM-99MRM, 2019 WL 2929545, at *6 (M.D. Fla. July 7, 2019), *report and recommendation adopted*, No. 2:18-cv-796-FtM-38MRM, 2019 WL 2929544, at *1 (M.D. Fla. July 8, 2019) (concluding that the defendant's release of a counterclaim for a breach of the duty of loyalty against the plaintiff constituted

"sufficient consideration for the Plaintiff's agreement not to accept or seek employment from the Defendant in the future" when the FLSA claim was part of a broader employment dispute).

Here, however, the parties' briefing does not address whether Plaintiff received any additional consideration in exchange for his agreement to the No Re-Employment provision. Thus, the Court is unable to determine whether the inclusion of such a provision precludes the approval of the proposed settlement agreement.

### D.  Non-Disparagement and Neutral Reference

The parties have also included a Non-Disparagement and Neutral Reference provision. (Doc. 12-1 at 3-4). Specifically, the provision provides that:

> Zamora agrees that he will not in any way disparage, defame, libel, slander, place in a negative light, or in any other way harm the reputation, goodwill or commercial interest of Senior Care to any persons . . . . Zamora also agrees to remove all reviews, rating, comments and statement posted online by him about Senior Care. Senior Care agrees to provide Zamora with a neutral job reference, including only dates of employment and positions held, although any reference request must be directed to the human resources department.

(Doc. 12-1 at 3-4).

Notably, "Courts within this circuit routinely reject . . . non-disparagement clauses contained in FLSA settlement agreements because they 'thwart Congress's intent to ensure widespread compliance with the FLSA.'" *Ramnaraine v. Super Transp. of Fla., LLC*, No. 6:15-cv-710-Orl-22GJK, 2016 WL 1376358, at *3 (M.D.

13

Fla. Mar. 28, 2016), *report and recommendation adopted*, No. 6:15-cv-710-Orl-22GJK, 2016 WL 1305353 (M.D. Fla. Apr. 4, 2016) (quoting *Pariente v. CLC Resorts & Devs., Inc.*, No. 6:14-cv-615-Orl-37TBS, 2014 WL 6389756, at *5 (M.D. Fla. Nov. 14, 2014)).  The Court has also noted that "[p]rovisions in a FLSA settlement agreement that call for . . . prohibiting disparaging remarks contravene FLSA policy and attempt to limit an individual's rights under the First Amendment." *Housen v. Econosweep & Maint. Servs., Inc.*, No. 3:12-cv-461-J-15TEM, 2013 WL 2455958, at *2 (M.D. Fla. June 6, 2013) (citing *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227 (M.D. Fla. Apr. 19, 2010); *Valdez v. T.A.S.O. Props., Inc.*, No. 8:09-cv-2250-T-23TGW, 2010 WL 1730700, at *1 n.1 (M.D. Fla. Apr. 28, 2010)).  Additionally, the Undersigned has found that the same concerns are also inherent in a Neutral Work Reference provision.  *Diviney*, 2019 WL 5110620, at *2 n.2.

Notwithstanding these concerns, the Court has approved such provisions where they have been negotiated for separate consideration or where there is a reciprocal agreement that benefits all parties.  *See Bell*, 2016 WL 5339706, at *3; *Smith*, 2014 WL 5690488, at *4 (citing *Caamal v. Shelter Mortg. Co.*, No. 6:13-cv-706-Orl-36, 2013 WL 5421955, at *4 (M.D. Fla. Sept. 26, 2013)).

Upon review, the Undersigned notes that the parties' briefing does not discuss whether the Non-Disparagement and Neutral Work Reference provision was negotiated for separate consideration.  Although the parties may have intended for the Court to find that the Non-Disparagement clause is adequate mutual consideration for the Neutral Work Reference clause, neither the briefing nor the

settlement agreement specifically addresses this issue.  Additionally, the parties have not adequately addressed the enforceability of such a provision in light of the First Amendment concerns.  *See Housen*, 2013 WL 2455958, at *2; *Diviney*, 2019 WL 5110620, at *2 n.3.  Accordingly, the Court is unable to conclude whether including this provision precludes the settlement from being a fair and reasonable resolution of the parties' FLSA dispute.  *See Bell*, 2016 WL 5339706, at *3.

### E. No Changes to Agreement

Additionally, the proposed settlement agreement contains a provision that purports to allow modification to the settlement agreement "by a written agreement executed by all parties." (Doc. 12-1 at 4).  This Court has previously found that a similar provision cannot be approved because it "leaves 'the parties free to circumvent *Lynn's Food [Stores]* review through *post hoc* modifications of an already-approved agreement.'" *Dexheimer v. Enjoy the City N., Inc.*, No. 6:18-cv-1980-Orl-76EJK, 2020 WL 5822195, at *3 (M.D. Fla. Apr. 13, 2020) (quoting *Dumas v. 1 Amble Realty, LLC*, No. 6:17-cv-765-Orl-37KRS, 2018 WL 5020134, at *3 (M.D. Fla. Mar. 9, 2018)).  For this reason, the Court cannot approve a settlement agreement "that is not in its final form" and has an "opportunity for amendment." *See id*. at *3 (internal quotation and citation omitted) (alteration in original).  Accordingly, the Undersigned cannot recommend approving a settlement agreement that contains such a provision.

### F.     Indemnification

Finally, the proposed settlement agreement contains a provision regarding indemnification for medical expenses. (*Id.* at 5). Specifically, the provision states, in relevant part:

> Zamora agrees to indemnify and hold harmless Senior Care from any and all claims, demands, liens, subrogated interests, and causes of action of any nature or character that have been or may in the future be asserted by Medicare and/or persons or entities acting on behalf of Medicare, or any other person or entity, arising from or related to this Agreement, any conditional payments made by Medicare, or any medical expenses or payments arising from or related to any claims released and given up that are subject to this Agreement or the release set forth herein.

(*Id.*).

The parties do not address the fairness or reasonableness of this non-standard provision. For that reason alone, the joint motion is due to be denied without prejudice. The Undersigned is also unsure why this provision is even relevant to a resolution of this FLSA action. Neither the complaint nor the joint motion references any dispute or claim involving Medicare, yet the proposed settlement seeks to impose Medicare-related obligations – specifically, a duty to indemnify – upon Plaintiff. Without more information from the parties, the Court simply cannot determine the reasonableness or fairness of this provision.

### IV.    Severability

The Undersigned notes that the proposed settlement agreement contains a severability provision that provides that "[i]f any provision(s) of this Agreement are

held to be illegal, invalid or unenforceable under present or future laws," the provision will be "curtailed and limited only to the extent necessary to bring it within the requirements of the law" and "the remainder of this Agreement shall thereafter be construed and enforced as if such illegal, invalid, or unenforceable provision(s) had never comprised a part [t]hereof." (Doc. 12-1 at 4).

The Court has previously stricken certain unacceptable or unenforceable provisions of a settlement agreement before approving the settlement agreement. *See, e.g.*, *Wood v. Surat Invs., LLC*, No. 6:19-cv-1681-Orl-41EJK, 2020 WL 2840565, at *4 (M.D. Fla. May 15, 2020), *report and recommendation adopted*, No. 6:19-cv-1681-Orl-41EJK, 2020 WL 2838861 (M.D. Fla. June 1, 2020) (striking an amendment provision); *Ramnaraine*, 2016 WL 1376358, at *2-3, *report and recommendation adopted*, 2016 WL 1305353 (striking a non-disparagement and confidential provision); *Housen*, 2013 WL 2455958, at *2 (same). Although the severability provision in the proposed settlement agreement would appear to permit this result – or otherwise permit the Court to re-draft provisions such that they can be approved – the Undersigned recommends against a *sua sponte* revision of the parties' agreement under these circumstances. The non-cash concessions constitute the bulk of the parties' agreement, and, therefore, any severance or revision would fundamentally and essentially change the nature of the parties' agreement. Accordingly, the Undersigned finds it more prudent to allow the parties an opportunity to explain why these concessions are fair and reasonable and omit those that cannot be included.

17

V.     **Attorney's Fees and Costs**

Finally, the proposed settlement agreement specifies that Defendant agrees to pay a total of $3,500.00 "for attorneys' fees and costs." (Doc. 12-1 at 2). In the joint motion, the parties represent that the "attorney's fees and costs were determined separately and apart from Plaintiff's recovery." (Doc. 11 at 7).

As United States District Judge Gregory A. Presnell explained in *Bonetti v. Embarq Management Company*:

> [T]he best way to insure that no conflict [of interest between an attorney's economic interests and those of his client] has tainted the settlement is for the parties to reach agreement as to the plaintiff's recovery before the fees of the plaintiff's counsel are considered. If these matters are addressed independently and seriatim, there is no reason to assume that the lawyer's fee has influenced the reasonableness of the plaintiff's settlement.
>
> In sum, if the parties submit a proposed FLSA settlement that, (1) constitutes a compromise of the plaintiff's claims; (2) makes full and adequate disclosure of the terms of settlement, including the factors and reasons considered in reaching [the] same and justifying the compromise of the plaintiff's claims; and (3) represents that the plaintiff's attorneys' fee was agreed upon separately and without regard to the amount paid to the plaintiff, then, unless the settlement does not appear reasonable on its face or there is reason to believe that the plaintiff's recovery was adversely affected by the amount of fees paid to his attorney, the Court will approve the settlement without separately considering the reasonableness of the fee to be paid to plaintiff's counsel.

715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009).

Given the procedural posture of the case, the amount of fees and costs appears fair and reasonable. Additionally, based on the parties' representations, the

Undersigned finds that the parties agreed upon the attorney's fees and costs without compromising the amount paid to Plaintiff.

## CONCLUSION

For the foregoing reasons, the Undersigned **RESPECTFULLY RECOMMENDS** that:

1. The parties' Joint Motion to Approve Settlement and Joint Stipulation of Dismissal with Prejudice (Doc. 11) be **DENIED without prejudice**.

2. The parties be ordered to elect one of the following options by an appropriate deadline to be selected by the presiding United States District Judge:

    a. File an amended joint motion to approve a settlement agreement that adequately addresses the issues identified herein and file a fully executed settlement agreement that is binding on relevant parties if approved by the Court; or

    b. Defendant file an Answer so that this case may proceed and the Court can enter an FLSA Scheduling Order.

**RESPECTFULLY RECOMMENDED** in Chambers in Ft. Myers, Florida on July 9, 2021.

Mac R. McCoy
United States Magistrate Judge

### NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.  A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.  *See* 11th Cir. R. 3-1.  A party wishing to respond to an objection may do so in writing fourteen days from the filing date of the objection.  The parties are warned that the Court will not extend these deadlines.  To expedite resolution, the parties may also file a joint notice waiving the fourteen-day objection period.

Copies furnished to:

Counsel of Record
Unrepresented Parties